OPINION
{¶ 1} Defendant, Ryan Watkins, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of murder, aggravated robbery, felonious assault, having a weapon while under disability, and accompanying firearm specifications. Defendants raises two assignments of error as follows:
{¶ 2} "[1.] The court's failure to instruct the jury as to the essential elements in `theft' and `aggravated robbery' amounted to plain error in this case as to both the aggravated robbery and the murder convictions.
{¶ 3} "[2.] Defense counsel's failure to object to the omission of definitions of essential elements of the aggravated robbery and murder charges from the jury instructions amounted to ineffective assistance of counsel."
{¶ 4} Defendant was indicted on two counts of aggravated murder in violation of R.C. 2903.01, one count of aggravated robbery in violation of R.C. 2911.01, one count of felonious assault in violation of R.C.2903.11, and one count of having a weapon under disability in violation of R.C. 2923.13. The aggravated murder, aggravated robbery and felonious assault counts all carried firearm specifications. In addition, two capital specifications were included in each of the aggravated murder counts. The case was tried before a jury on all charges except the having a weapon under disability charge, which was tried to the court.
{¶ 5} Following trial, the jury found defendant not guilty of both counts of aggravated murder, but guilty of one count of the lesser-included offense of murder in violation of R.C. 2903.02. Defendant was also found guilty of aggravated robbery, felonious assault, and all accompanying firearm specifications. The trial court found defendant guilty of having a weapon while under disability. After a sentencing hearing, the trial court imposed prison terms of fifteen years to life on the murder charge, eight years on the aggravated robbery charge, seven years on the felonious assault charge, and twelve months on the having a weapon under disability charge. The court also imposed an additional three years' actual incarceration for use of a firearm in the commission of a murder. The court ordered the sentences for aggravated robbery and felonious assault to be served consecutively to each other and to the sentence for murder, and ordered the sentence for having a weapon under disability to be served concurrently with the other three sentences. The three years' actual incarceration for use of a firearm was ordered to be served consecutively with and prior to the sentence imposed on the murder charge. This appeal followed.
{¶ 6} At trial, testimony by the witnesses established the following facts. In August 2000, Stanley Cooper drove to Columbus from Youngstown to look for his younger brother, Randy. The last address Cooper had for Randy was an apartment on Ryan Avenue, so Cooper began his search there. When Cooper arrived at the apartment, Bruce Johnson, Randy's roommate, came to the door. Cooper asked Johnson if he had seen Randy. Johnson said he might know where to find him and offered to ride with Cooper to that location. Before they left, Johnson put two large black bags containing several pounds of marijuana in the trunk of Cooper's car.
{¶ 7} After an interim stop, Johnson directed Cooper to an apartment building on May Avenue, where they found defendant and another man standing outside. At Johnson's urging, Cooper asked defendant if he wanted to buy some of the marijuana. Cooper opened the trunk and showed defendant and the other man the bags of marijuana. Neither defendant nor the other man purchased any of the marijuana.
{¶ 8} At about the same time, David White, a friend of defendant's, drove up in defendant's car. White asked Cooper and Johnson to drive him to an impound lot to pick up his car. Enroute to the impound lot, Cooper and Johnson told White that they had marijuana for sale, and White told them he would buy a small amount of it. After White retrieved his car, Cooper and Johnson followed him back to an alley behind defendant's apartment building so that White could buy the marijuana. White went into the apartment building, but came out a short time later with defendant, Byron Truss, and Glenn Lovelady.
{¶ 9} When Cooper saw the four men walk out of the apartment building, he got out of his car because "[he] knew it didn't look good." (Oct. 29, 2001 Tr. Vol. II, at 364.[1]) Johnson remained seated inside the car. Defendant and Lovelady approached the car, brandishing guns. Lovelady put his gun to Cooper's head, and defendant told Cooper to open the trunk or they would kill him. After Cooper opened the trunk, White and Truss removed the bags of marijuana, and White put them in defendant's car. Lovelady and defendant pistol-whipped Cooper, knocking him to the ground. Defendant and White took Cooper's wallet and watch and locked his keys in the trunk. The four men then ran toward the apartment building. Defendant stopped and fired his gun toward Cooper's car. A bullet went through the windshield, striking Johnson in the chest. Defendant and the others fled in separate cars, eventually meeting in an abandoned garage to split the proceeds of the robbery.
{¶ 10} Unable to drive away, Cooper and Johnson left the scene on foot. When police officers arrived, they found Johnson lying on the sidewalk with a gunshot wound to the chest. Cooper, bleeding badly from his head injuries, was attempting to assist Johnson. Medics responded to the scene and treated Cooper's injuries; however, Johnson died as a result of the gunshot wound.
{¶ 11} Defendant was arrested and charged with aggravated murder, aggravated robbery, felonious assault and having a weapon under disability. While in jail awaiting trial, defendant admitted to the robbery and shooting to a fellow inmate, Kevin Thomas.
{¶ 12} By his first assignment of error, defendant contends that the trial court erred in failing to instruct the jury on the essential element of "theft offense" when defining the offense of aggravated robbery. Defendant further contends that the court's failure to give the jury complete instructions on the definition of aggravated robbery, i.e., including theft offense, adversely impacted the jury instructions on the murder charge. Defendant contends that these errors deprived him of his right to a fair trial and due process of law.
{¶ 13} Count three of the indictment charged defendant with the aggravated robbery of Cooper in violation of R.C. 2911.01. R.C.2911.01 defines aggravated robbery, in relevant part, as follows:
{¶ 14} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
{¶ 15} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
{¶ 16} The Ohio Revised Code provides that "theft offense" is an essential element of the crime of aggravated robbery. "Theft offense" is defined in R.C. 2913.01(K) as including, relevant to the instant case, the crime of theft, which is defined in R.C. 2913.02 as follows:
{¶ 17} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
{¶ 18} "(1) Without the consent of the owner or person authorized to give consent;
{¶ 19} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
{¶ 20} "(3) By deception;
{¶ 21} "(4) By threat;
{¶ 22} "(5) By intimidation."
{¶ 23} The court provided the following jury instructions relevant to aggravated robbery:
{¶ 24} "Before you can find [defendant] guilty of [aggravated robbery], you must find beyond a reasonable doubt that on or about that eighteenth of August, two-thousand, here in Franklin County, Ohio, the Defendant, in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense did have a deadly weapon on or about his person or under his control, and the Defendant displayed the weapon or he brandished the weapon, or he indicated that he possessed the weapon or he used the weapon." (Oct. 31, 2001 Tr. Vol. II, at 319.)
{¶ 25} The trial court did not define "theft offense" or "theft" as required in the beginning of the definition of aggravated robbery.
{¶ 26} In count two of the indictment, defendant was charged with aggravated murder — purposely causing the death of Johnson while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery — in violation of R.C. 2903.01(B). In its charge to the jury, the court stated:
{¶ 27} "In Count Two, before you can find the Defendant guilty of aggravated murder as charged in Count Two, you must find beyond a reasonable doubt that * * * the defendant purposely caused the death of Bruce Johnson, while the Defendant was committing or attempting to commit or while the Defendant was fleeing immediately after committing or attempting to commit aggravated robbery.
{¶ 28} "Now, I think you can see why I defined aggravated robbery. That same definition for that third count also applies when you are considering Count Two. The death must occur as part of the acts leading up to or occurring during or immediately subsequent to the aggravated robbery, and the death must be directly associated with the aggravated robbery or Defendant's flight immediately after the aggravated robbery or attempted aggravated robbery." (Oct. 31, 2001 Tr. Vol. II, at 319-320.)
{¶ 29} The court also instructed the jury on the lesser included offense of murder as to count two. The definition of murder is provided in R.C. 2903.02:
{¶ 30} "(A) No person shall purposely cause the death of another * * *[.]"
{¶ 31} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
{¶ 32} The trial court's instructions to the jury regarding murder were as follows:
{¶ 33} "* * * [T]hey're [sic] alternate ways that you can commit murder as relates to the lesser included offense of Count Two.
{¶ 34} "* * * Murder may be committed in either of these two ways. It occurs when the accused purposely caused the death of another person. That is, if you find that the Defendant purposely caused the death of Bruce Johnson. It also occurs where the accused caused the death of another person, Bruce Johnson in this case, as a proximate result of the Defendant's committing or attempting to commit aggravated robbery.
{¶ 35} "So, the lesser included offense of murder may be committed in one of two ways. Either purposely causing the death of Bruce Johnson, or causing the death of Bruce Johnson as a proximate * * * result of the offender committing or attempting to commit aggravated robbery.
{¶ 36} "Therefore, before you can find the Defendant guilty of the offense of murder as a lesser included offense of aggravated murder, felony murder in Count Two, you must find beyond a reasonable doubt either that the Defendant purposely caused the death of Bruce Johnson, or the Defendant caused the death of Bruce Johnson as a proximate result of the Defendant's committing or attempting to commit aggravated robbery[.] * * * Those are the elements." (Oct. 31, 2001 Tr. Vol. II, at 322-323.)
{¶ 37} As previously noted, the jury found defendant guilty of the lesser-included offense of murder, aggravated robbery, felonious assault and having a weapon under disability. Defendant contends that the trial court erred in failing to define the term theft as outlined in R.C. 2913.02 with respect to the aggravated robbery charge. Defendant further contends that the court's failure to properly instruct the jury on all of the elements of aggravated robbery, including theft, adversely impacted the jury instructions on the murder charge. Defendant contends that as a result of the trial court's failure, the jury did not have before it all the necessary information to make a reliable, educated finding on the charges. Defendant concedes that no objection was made to the charge as required by Crim.R. 30,[2] but maintains that the error was a plain error affecting his substantial rights and, as such, may be noticed as provided by Crim.R. 52(B).[3]
{¶ 38} As defendant did not request an instruction defining the term theft, he can prevail only if the trial court's failure to define the term amounted to plain error. "Plain error is an obvious error * * * that affects a substantial right." State v. Yarbrough (2002),95 Ohio St.3d 227, 224, quoting State v. Keith (1997), 79 Ohio St.3d 514,518. An alleged error constitutes plain error only if the error is "obvious" and, but for the error, the outcome of the trial clearly would have been different. Id. "[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28, quoting State v. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, and State v. Lumpkin (Feb. 25, 1990), Franklin App. No. 91AP-567.
{¶ 39} We agree with defendant that the trial court should have given the jury the statutory definition of theft as part of its definition of aggravated robbery. R.C. 2945.11 requires a trial court to charge the jury with all the law required to return a verdict. State v. Mitchell (1989), 60 Ohio App.3d 106, 108. However, "[f]ailure of a trial court to separately and specifically instruct the jury on every essential element of each crime with which an accused is charged does not per se constitute plain error under Crim.R 52(B)." State v. Adams (1980),62 Ohio St.2d 151, paragraph two of the syllabus. If the term is one of common usage and is actually used in that sense, the failure to define the term does not mandate a reversal. State v. Riggins (1986),35 Ohio App.3d 1, 8. Further, the failure to define a term will not require a reversal if there is sufficient evidence that the defendant was not prejudiced by the error. "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt." State v. Eley (1978), 56 Ohio St.2d 169, at syllabus. In such an event, the failure to define a term is harmless error.
{¶ 40} Although the term theft is statutorily defined, it is a term of common usage and is used in the statute in its ordinary sense. There is no indication in the record that the jury requested clarification or definition of the term. Defendant does not explain what incorrect meanings, if any, the jury might have attached to the term. Further, in defining aggravated robbery in his closing argument, the prosecutor defined the term theft for the jury, specifically stating that it was "[p]roperty that wasn't his taken by force against somebody else's consent, using a deadly weapon * * *." (Oct. 31, 2001 Tr. Vol. II, at 274.)
{¶ 41} In addition, we conclude that there was sufficient evidence in the record to support a finding that defendant committed an aggravated robbery, i.e., theft, while armed with a deadly weapon. It was undisputed that the marijuana, wallet and watch belonged to Cooper and/or Johnson and were forcibly taken by defendant and the others. Cooper testified that he and Johnson offered to sell the marijuana to both defendant and White. White confirmed that he agreed to buy some of the marijuana from the two, but later, with defendant and the others, robbed them at gunpoint. Further, Thomas testified that while incarcerated with defendant, defendant admitted to the aggravated robbery.
{¶ 42} Given the foregoing, we conclude that the circumstances of this case do not require us to take notice of plain error in order to prevent a manifest miscarriage of justice. We do not believe that the jury was hindered in its deliberations on either the murder or aggravated robbery charges in any way by the trial court's failure to provide the statutory definition of the term theft as part of its instructions on aggravated robbery. Defendant has offered no evidence to prove that the result of the trial would have been different had the trial court defined the term. Accordingly, this court is unable to find plain error warranting a reversal. The first assignment of error is not well-taken.
{¶ 43} By the second assignment of error, defendant contends that defense counsel's failure to object to the trial court's failure to define theft offense as part of the instructions on aggravated robbery constituted ineffective assistance of counsel. We disagree.
{¶ 44} In Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, the Supreme Court of the United States established a two-part test for determining when a conviction must be reversed due to the ineffective assistance of counsel:
{¶ 45} "* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must how that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the verdict unreliable."
{¶ 46} Thus, under Strickland, this court may find ineffective assistance of counsel in the instant case only if defendant demonstrates both that his counsel's failure to object to the instructions on aggravated robbery was such a serious error that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment and that he was prejudiced by this serious error.
{¶ 47} In overruling defendant's first assignment of error, we considered in detail defendant's contention regarding the trial court's failure to define the term theft in its instructions on aggravated robbery. For the reasons we set forth in finding no reversible error with respect to the jury instructions on aggravated robbery, and, by extension, murder, we find no merit to defendant's contention that defense counsel's failure to object to the instruction constitutes ineffective assistance of counsel. The second assignment of error is not well-taken.
{¶ 48} For the foregoing reasons, both of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and KLATT, J., concur.
[1] The transcript of the proceedings was prepared by two different court reporters. Because the pages were not numbered sequentially between the transcripts, any reference to transcript pages will be referred to by date, volume number and page number.
[2] Crim.R. 30(A) provides, in pertinent part: "* * *On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"
[3] Crim.R 52(B) provides, in relevant part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."